FILED

2007 Nov-16  AM 10:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JANET COLVERT, et al.,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CIVIL ACTION NO.:** |
| | ] | **2:06-CV-465-VEH** |
| **DOLGENCORP, INC., d/b/a** | ] | |
| **Dollar General,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## MEMORANDUM OPINION

### I.    INTRODUCTION

Plaintiffs, including Wanda Womack ("Womack") joined this case by way of amendment on March 7, 2006.  (Doc. #3).  Pending before the court is Defendant Dolgencorp, Inc., d/b/a Dollar General's ("Dollar General") Amended Motion for Summary Judgment on Untimely Claims Asserted by Wanda Womack ("Amended Motion") (Doc. #82) filed on June 20, 2007.  Womack filed her opposition (Doc. #87) on June 27, 2007, and Dollar General filed its reply (Doc. #89) on July 2, 2007.  As discussed more fully below, Dollar General has carried its burden on summary judgment of demonstrating the absence of any material factual dispute and entitlement to judgment as a matter of law.  Accordingly, Dollar General's Amended

Motion is due to be granted.

## II.   STATEMENT OF FACTS[1]

### A.   Dollar General Evaluation and Leave Policies and Procedures

Dollar General Store Managers are evaluated, in writing, each February or March regarding their performance during the prior fiscal year, which typically ends on or around January 31.  AF No. 1.[2]  These evaluations are performed at the same

---

[1]Whenever the facts are in dispute, they are stated in the manner most favorable to the non-moving party.  *See Fitzpatrick*, *infra*, 2 F.3d at 1115.  Therefore, these are the facts for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted).

[2]The designation "AF" stands for admitted fact and indicates a fact offered by Dollar General that Womack has admitted in her written submissions on summary judgment, in her deposition testimony, or by virtue of any other evidence offered in support of her case.  Whenever Womack has adequately disputed a fact offered by Dollar General, the court has accepted Womack's version. The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of Dollar General's Statement of Facts as set forth in Doc. #80 and responded to by Womack in Doc. #87. A number following a decimal point corresponds to the particular sentence within the numbered statement of facts.  For example, (AF No. 4.2) would indicate the second sentence of paragraph 4 of Dollar General's Statement of Facts is the subject of the court's citation to the record. Similarly, the designation "AAF" stands for additional admitted fact and corresponds to Womack's Statement of Facts contained in Doc. #87 and responded to by Dollar General in Doc. #89.  Any other facts referenced by the parties that require further clarification are dealt with later in the court's opinion.

time of year for all Store Managers.  AAF No. 4.3.[3]  After the District Manager

completes the Store Manager evaluation, the evaluations are reviewed by the

Regional Managers.  AAF No. 7.

Dollar General requires these performance evaluations on Store Managers "just

for annual merit increases."  AF No. 6.   More specifically, the written performance

evaluations are utilized in determining whether a Store Manager will receive a merit

increase and, if so, the amount of such increase.  AF No. 2.  Any raises are typically

effective in April of each year for active employees.  AF No. 3.

If a Store Manager is on a leave of absence during the period in which the

annual evaluations are conducted, as long as he or she actively worked as a Store

Manager for a sufficient part of the prior fiscal year, he or she is evaluated in writing.

AF No. 4.1.  However, the written performance evaluation is not reviewed with the

Store Manager unless and until he or she returns from leave.  AF No. 4.2.  A Store

Manager on a leave of absence is not eligible for a raise, regardless of how well

he/she scores on the performance evaluation, unless and until he/she returns from that

leave to active status.  AF No. 5.

---

[3]Womack's numbering of facts included paragraph 4 twice.  The court has
treated the second paragraph 4 as a third sentence to the first paragraph 4; hence, the
designation of AAF No. 4.3.

**B.    Dollar General Workers' Compensation Policies and Procedures**

Dollar General is self-insured for workers' compensation benefits in Alabama. AF No. 6.  All benefits paid relating to a workers' compensation claim for an Alabama employee are paid by Dolgencorp, Inc. from an account specifically designated for the payment of such benefits.  AF No. 7.1.  These benefits may include medical expenses and total temporary disability benefits ("TTD").  AF No. 7.2.

Workers' compensation benefits are administered and paid through Dollar General's Risk Management Department; they are not paid through the Payroll Department.  AF No. 8.  TTD benefits are designed to compensate an employee for loss of income due to an inability to work for a temporary period of time.  AF No. 9.1. TTD benefits are calculated as follows:  66 2/3 of the employee's average wages over the 52-week period preceding the employee's injury.  AF No. 9.2.  This calculation is mandated by Alabama state law.  AF No. 9.3.

No income or other taxes are withheld or deducted from the TTD benefit payments.  AF No. 10.  While on a workers' compensation leave of absence, an employee continues to be considered a Dollar General employee and continues to be eligible to receive health insurance benefits as long as the employee pays his or her share of the premiums.  AF No. 11.1.  These premiums are not deducted from the

TTD payments and must be paid directly to Dollar General's benefits department.  AF No. 11.2.  While on a workers' compensation leave of absence, an employee is not eligible for any other Dollar General-provided benefits, including the granting of additional vacation time or pay.  AF No. 12.

### C.   Womack's Relevant Employment History with Dollar General

Plaintiff Wanda Womack ceased active employment with Dollar General effective November 17, 2003, when she went on a workers' compensation leave of absence.  AF No. 13.  According to Dollar General's payroll records,  Womack's last payroll check (*i.e.*, wages) was dated December 12, 2003.  AF No. 14.

On March 8, 2004, Womack's District Manager evaluated her performance. AAF No. 2.  Womack was still evaluated even though she was out on medical leave because she was the assigned store manager for most of the fiscal year.  AF No. 5. Womack received a score of 1.4 on this evaluation.  AF No. 3.  In 2004, a score of 1.75 or above was considered a Meets Standard.  AAF No. 4.1.  Anything below a 1.75 was considered Below Standard.  AAF No. 4.2.

Although Womack was not eligible for a raise until she came back from medical leave, she would not have received a raise due to the 1.4 evaluation she was given by Warren.  AAF No. 8.  If Womack had been allowed by Dollar General to come back to work, she would not have been eligible for a raise at that point based

on her score of 1.4 on the March evaluation.  AAF No. 9.

Womack's evaluation was final on March 15, 2004, when it was signed by the Regional Manager, Jeff Weaver.  AAF No. 10.  Womack's employment with Dollar General was terminated effective May 25, 2004, because she could not lift 40 pounds. AF No. 15.1; AAF No. 11.  When Womack went out on worker's compensation it was her intent to remain employed at Dollar General and to return to her store when her doctor and the company allowed.  AAF No. 1.  Womack never returned from the leave of absence that began on November 17, 2003.  AF No. 15.2.

Dollar General's payroll records reflect that, after December 12, 2003, Womack received no payroll check (*i.e.*, salary or wages) from Dollar General.  AF No. 16.  After December 12, 2003, Womack received workers' compensation benefits from Dollar General, including TTD benefits of $483.33 per week.  AF No. 18.[4]

On or about March 8, 2004, Womack's District Manager, David Warren, completed a written performance evaluation for Womack regarding her 2003 work performance through November 17, 2003.  AF No. 19.  Because Womack was on a leave of absence throughout April, 2004 and through to her termination on May 25, 2004, she was not eligible for a raise and would not have received a raise in April,

---

[4]Dollar General's numbering of facts skips paragraphs 17 and 21.  (Doc. #80 at 7).

2004, even if she had received the highest score possible on her March 2004 evaluation.  AF No. 20.  Womack's EEOC Charge is dated September 4, 2004.  AF No. 21.

## III.   BURDEN ON SUMMARY JUDGMENT

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R .Civ. P. 56. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 134 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984).  Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case,  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), as

7

modified by *Desert Palace v. Costa*, 539 U.S. 90 (2003), that allocation scheme applies only in cases where there is no direct evidence of discrimination, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert Palace*, 539 U.S. at 101-02. The court is aware that the summary judgment rule applies in job discrimination cases just as in other cases. *Chapman v. AI Transport*, 229 F.3d 1012, 1025 (11th Cir. 2000) (rejecting an earlier, contrary general rule and emphasizing that no thumb is to be placed on either side of the scale).

IV.   **ANALYSIS**

A.   **General Background on Title VII Time Requirements**

Title VII requires that a charging party file her charge of discrimination within 180 days of the allegedly discriminatory employment action.  *See* 42 U.S.C. § 2000e-5(a); *see also National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 112-13 (2002) (finding that Title VII precludes recovery for discrete acts of discrimination that occur outside the statutory time period [180 days]).  This requirement applies equally to claims of pay discrimination arising under Title VII. *See Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162 (2007).

In *Ledbetter*, the Supreme Court recently clarified that a plaintiff must file a charge within 180 days of the allegedly discriminatory pay decision itself; the mere receipt of paychecks during the limitations period which result from an allegedly discriminatory decision occurring outside the limitations period will not render the claim timely.  *Id.* at 2165.

B.   **Application to Womack's Discriminatory Pay Claims**

Under the Supreme Court's recently clarified analysis in *Ledbetter*,  for Ms. Womack's discriminatory pay claims to be viable, she must have filed her charge of discrimination, at the latest, within 180 days after the last decision that actually affected her salary or compensation for work as a Store Manager.  She is not able to

9

meet this time requirement.

More specifically, Womack  received her last paycheck from Dollar General on December 12, 2003, with the pay decision relating to that paycheck having been made in or about April, 2003.  Therefore, pursuant to *Ledbetter*, she was required to file an EEOC Charge at best (assuming that the last pay decision was made at the very end of April 2003) no later than October 27, 2003, to preserve any aspect of a discriminatory pay claim arising under Title VII.  However, instead Womack did not file her Charge until September 4, 2004 – eleven months past the deadline.

## C.    Womack's Alternative Theories

In an effort to overcome the result demanded by *Ledbetter*, Womack asserts that:  (1) her continued receipt of workers' compensation benefits into the limitations period (which benefits were based on a percentage of her salary) constitutes an effect of the alleged discrimination and qualify as a timely-charged act of discrimination; and (2) her supervisor's preparation of a performance evaluation during the limitations period (while she was on workers' compensation leave) constitutes a timely-charged act of discrimination.  Neither one of these positions saves her Title VII claims.

### 1. Womack's receipt of workers' compensation benefits does not preserve her Title VII claims.

As pointed out by Dollar General, it was well-settled that benefits received or a status created under neutral benefits systems and policies (like a workers' compensation program) that are affected by an alleged discriminatory decision made in the past constitute only the effects of past alleged discrimination, and do not constitute discriminatory conduct themselves. In support of this pre-*Ledbetter* proposition, Dollar General has referred this court to a number of different analogous cases. *See United Air Lines Inc. v. Evans*, 431 U.S. 553, 560 (1977) (plaintiff's position under neutral seniority system affected by past discrimination not actionable); *Evans*, 431 U.S. at 560 ("[S]uch a challenge to a neutral system may not be predicated on the mere fact that a past event which has no present legal significance has affected the calculation of seniority credit, even if the past event might at one time have justified a valid claim against the employer."); *City of Hialeah, Florida v. Rojas*, 311 F.3d 1096, 1102-03 (11th Cir. 2002) (plaintiffs' reduced retirement compensation resulting from alleged past discrimination merely a present consequence of past discrimination); *Carter v. West Publishing Co.*, 225 F.3d 1258, 1265 (11th Cir. 2000) (loss of dividends on stock denied to plaintiff does not constitute a continuing violation of Title VII); *Ross v. Buckeye Cellulose Corp.*,

980 F.2d 648 (11th Cir. 1993) (freeze on pay and progression system that affected all employees was a neutral policy, even though black employees were frozen into lower pay resulting from prior discrimination in the system); *Webb v. Indiana Nat'l Bank*, 931 F.2d 434 (7th Cir. 1991) (continuing pay disparity arising from denied promotion not actionable because it was the inevitable consequence of the denied promotion); *Allen v. U.S. Steel Corp.*, 665 F.2d 689 (5th Cir. 1982) (denied vacation time and reduced pensions were the effects of alleged discriminatory lay-off and recall policy); *Dobbs v. City of Atlanta*, 606 F.2d 557 (5th Cir. 1979) (benefits provided under neutral pension plans were the effects of discrimination); *Trabucco v. Delta Air Lines*, 590 F.2d 315 (6th Cir. 1979) (lower pay and fringe benefits were the effects of alleged discriminatory reclassification); *Bradley v. Florida Dept. Of Transp.*, 2002 WL 32107945 (N.D. Fla. Nov. 11, 2002)(continuing pay disparities resulting from alleged discriminatory demotion "are merely the lingering effects of prior discrimination"); *Shelford v. New York State Teachers Retirement System*, 889 F. Supp. 81, 87-88 (E.D.N.Y. 1993) (loss in retirement benefits were merely the effects of allegedly discriminatory break-in-service rules); *Freude v. Bell Telephone Co. of Pennsylvania*, 438 F. Supp. 1059, 1061 (E.D. Pa. 1977) (pension payments derived from discriminatory scale only the effects of past discrimination).

Womack has not offered anything to show that her workers' compensation

benefits arose out of something other than the application of a neutral benefits systems and policies as governed by Alabama law. *See* Ala. Code § 25-5-57. Additionally, Womack's efforts to distinguish her situation from those cases above are unpersuasive.  In sum,  because Womack's Title VII claims are based on acts that occurred prior to the limitations period, they are time-barred, even if she still "feels the effects" of the alleged discrimination through diminished pensions, retirement benefits, or other benefits (such as workers' compensation) received through a neutral benefit plan.  *See Rojas*, 311 F.3d at 1103 (dismissing class action challenging allegedly discriminatory employment policies where named representative's claim was time-barred because the only acts that took place within the statutory period for filing an EEOC charge were merely neutral effects of discrimination that occurred outside the statute of limitations); *see  also Ledbetter*, 127 S. Ct. at 2165.

### 2.    Womack's performance evaluation does not preserve her Title VII claims.

Similarly, Womack's reliance upon her  performance evaluation does not save her Title VII claims.  More specifically, Womack attempts to rely upon the low score that she received on her March 2004 evaluation as an adverse employment action that had a negative effect on her compensation.

However, under undisputed Dollar General policy and practice, Womack was

never eligible for a raise in April, 2004, due to her intervening leave of absence beginning in November 2003 and would not have received one even if she had received the highest possible score on the March 2004 evaluation.  Therefore, Womack's March 2004 evaluation did not, in fact, have any effect on her pay and does not constitute an adverse employment action occurring during the limitations period.  *See Stavropoulos v. Firestone*, 361 F.3d 610, 617 (11th Cir. 2004) ("[A]n action which, it turns out, had no effect on an employee is not an 'adverse action.'"); *see also, e.g., Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001) ("An employment action is considered 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment. . . .  Negative performance evaluations, standing alone, do not constitute adverse employment actions[.]") (citing *Silk v. City of Chicago*, 194 F.3d 788, 820-03 (7th Cir. 1999) (footnote omitted)); *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001); *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004) ("[A] poor performance evaluation 'is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms and conditions of the recipient's employment.'") (citing *Spears v. Missouri Dept. of Corr. & Human Resources*, 210 F.3d 850, 854 (8th Cir. 2000)); *Cossette v. Minnesota Power & Light*, 188 F.3d 964, 972 (8th Cir. 1999) ("[T]he negative evaluation does not by itself constitute an adverse employment

action within the ADA's [or Title VII's] contemplation."); *Elwell v. PP&L Electric Utilities Corp.*, No. 99-2716, 2001 WL 1529063, at *9 (E.D. Pa. Nov. 28, 2001) ("[T]he presumed or speculative effect of an evaluation, without a showing of actual harm, is insufficient to demonstrate an adverse employment action.") (citing *Weston v. Commonwealth of Pennsylvania*, 251 F.3d 420, 430-31 (3d Cir. 2001)).

Accordingly, the fact that the March 2004 evaluation could have resulted in the denial of a raise to Womack if she had been an active employee with Dollar General at the time is of no actionable consequence. "An action which, it turns out, had no effect on an employee is not an 'adverse' action." *Gupta v. Florida Board of Regents*, 212 F.3d 571, 588 (11th Cir. 2000) (no adverse employment action when professor is not assigned to teach particular classes because professor ultimately made decision not to teach that particular semester) (cited in *Stavropoulos, supra*)); *Whittaker v. Northern Illinois Univ.*, 424 F.3d 640, 647(7th Cir. 2005) (explaining that suspension without pay is not adverse employment action when employee takes leave of absence before suspension takes effect and never returns from it – "[A] suspension without pay that is never served does not constitute an adverse employment action.") (citing *Stavropoulos*, 361 F.3d at 617). Therefore, Womack's March 2004 evaluation does not preserve her Title VII compensation claims, and Dollar General's Amended Motion is due to be granted.

## V.     CONCLUSION

Therefore, for the reasons explained above, Dollar General has met its burden on summary judgment with respect to Womack's Title VII claims.  Accordingly, Dollar General's Amended Motion is due to be granted, and Womack's Title VII claims are due to be dismissed from this case.[5]   The court will enter an order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this 16th day of November, 2007.

_____

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[5]Womack's Equal Pay Act claims remain before the court.

16