# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **JANET COLVERT, et al.,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CIVIL ACTION NO.:** |
| | ] | **2:06-CV-465-VEH** |
| **DOLGENCORP, INC., d/b/a** | ] | |
| **Dollar General,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## MEMORANDUM OPINION AND ORDER

This Equal Pay Act ("EPA") action is brought under § 216(b) of the Fair Labor Standards Act ("FLSA") by Wanda Womack ("Womack") and others[1] against Defendant Dolgencorp, Inc., d/b/a Dollar General's ("Dollar General") alleging that she and other female Dollar General store managers were paid less than male store managers who performed jobs of equal skill, responsibility and effort under similar

---

[1] The other named plaintiffs who remain in the case as of the first amended complaint filed on March 7, 2006, include Pam Hall ("Hall"), Linda Lockhart ("Lockhart"), and Deandra Warren ("Warren"). The court understands that Plaintiffs are agreeable to the dismissal of Warren. (Doc. #99 at 4 n.7). Plaintiffs also seek to add a group of twenty (20) additional named plaintiffs (the "Battle Plaintiffs"), which relief the court has granted by way of a separate order. A subset of the Battle Plaintiffs, as discussed *infra*, at 2 n.3, have filed declarations in support of the EPA notice motion (Doc. #91 at Exs. A, A-2) and are pursuing claims under the EPA, both individually and on behalf of similarly situated women. (Doc. #93 at Ex. B ¶ 7).

working conditions.  (Doc. #3 ¶¶ 14-15).[2]

Pending before the court are Plaintiffs' Motion to Facilitate EPA Notice ("Notice Motion") (Doc. #91)[3] and Defendant Dolgencorp, Inc., d/b/a Dollar General's ("Dollar General") related Motion to Drop Parties Pursuant to FRCP 21 ("Motion to Drop") (Doc. #103).  Womack seeks to send notice of the action to all female Dollar General store managers nationwide.  Dollar General asserts that Plaintiffs' EPA claims "are not suited for treatment as a collective action," (Doc. #99 at 1) and urges that "an individualized inquiry as to the underlying basis for each individual Store Manager's salary is required."  (Doc. #99 at 2).

After consideration of the parties' motions and briefs and for the reasons set

_____

[2]The case also includes gender discrimination claims brought under Title VII. (Doc. #3 ¶¶ 13, 15).

[3]29 U.S.C. § 216(b) authorizes employees to bring collective pay actions "in behalf of . . . themselves and other employees similarly situated" who file notices of consents to join or opt-in to the suit.  The Notice Motion includes EPA declarations from fifteen (15) of the Battle Plaintiffs:  (1) Amy Battle ("Battle"); (2) Renita Bishop ("Bishop"); (3) Connie Butler ("Butler"); (4) Penny Davis ("Davis"); (5) Patty Eberle ("Eberle"); (6) Candie Gamble ("Gamble"); (7) Valerie Hallstrom-Miller ("Miller"); (8) Peggy Jones ("Jones"); (9) Vicki Joy ("Joy"); (10) Penny Leonard ("Leonard"); (11) Phyllis Nutt ("Nutt"); (12) Peggy Van Ostran ("Van Ostran"); (13) Ruby Sims ("Sims"); (14) Audrey Spicer ("Spicer"); and (15) Alicen Taylor ("Taylor") (sometimes collectively referred to as the "EPA Battle Plaintiffs").  The remaining five (5) of the Battle Plaintiffs:  Patricia Blackmon, Mary Frazier, Patricia Howard, Shirley Ledford, and Ann Thomas are not included in Plaintiffs' Notice Motion as EPA declarants.

forth hereinafter, Plaintiffs' Notice Motion is **GRANTED**.  More specifically, the

court agrees to conditionally certify an EPA collective action on a nationwide basis.[4]

      Dollar General's Motion to Drop is **GRANTED IN PART** and **DENIED IN**

**PART**.  Specifically, Dollar General's Motion to Drop is **GRANTED** as to Warren's

EPA claims based upon this court's understanding that Plaintiffs have no objection

to this dismissal,[5] and is otherwise **DENIED**.

---

[4]At this preliminary stage, the court is merely deciding whether a collective
action should be certified for notice purposes to the putative EPA class only.
Therefore, this decision, including the court's assessment of the same establishment
issue, is conditional and is subject to further review upon the parties' completion of
discovery.  *See infra*, at 8-9; *see also Moss v. Crawford & Co.*, 201 F.R.D. 398, 409
(W.D. Pa. 2000) (recognizing that second stage of FLSA certification process
involves higher standard of post-discovery review including assessment of "disparate
factual and employment settings of the individual plaintiffs" such as particular job
duties, geographical location, supervision, and salary)

[5]In Plaintiffs' response (Doc. #106) to Dollar General's Motion to Drop, they
do not specifically address the status of Warren as an EPA plaintiff or oppose her
dismissal in any manner.  Therefore through their silence, Plaintiffs have abandoned
the issue of Warren's ability to properly proceed in this case.  *See, e.g.*, *Wilkerson v.
Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when
argument not presented in initial response to motion for summary judgment); *Bute v.
Schuller International, Inc.,* 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (finding
unaddressed claim abandoned); *see also Coalition for the Abolition of Marijuana
Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief
and argue issue at the district court is sufficient to find the issue has been abandoned);
*Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995); *Hudson
v. Norfolk Southern Ry. Co.,* 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001).  *Cf.
McMaster v. United States,* 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be
considered abandoned when district court is presented with no argument concerning
a claim included in the plaintiff's complaint); *Road Sprinkler Fitters Local Union No.*

Facts

This lawsuit was originally filed by Janet Colvert ("Colvert")[6] (Doc. #1) on

March 7, 2006.[7]   On that same date, Womack, along with several other plaintiffs,

filed an amended complaint.  (*See generally* Doc. #3).  Womack is a former female

store manager for Dollar General who joined this action on March 7, 2006, on the

basis that she and other female Dollar General store managers were discriminated

against in pay in violation of the EPA.  (Doc. #3 ¶¶ 14-15).

Womack and the fifteen (15) EPA Battle Plaintiffs (*see supra*, at 2 n.3) have

filed declarations with the court in support of Plaintiffs' Notice Motion.  (*See* Doc.

#91 at Exs. A, A-2).[8]  In these statements, each plaintiff alleges (when equipped with

---

*669 v. Independent Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding
that a district court "could properly treat as abandoned a claim alleged in
the complaint but not even raised as a ground for summary judgment").  Also because
Plaintiffs have not challenged Dollar General's position that Warren does not have
any Title VII claims either, this means that she is due to be dismissed from the case
with prejudice.  Consistent with this ruling, the court notes that Plaintiffs' proposed
second amended complaint omits any references to Warren or her claims.  (*See
generally* Doc. #90 at Ex. B).

[6]The misspelling of Colvert's last name as "Calvert" in the initial pleadings was
subsequently jointly acknowledged by the parties (*see* Doc. #12 at 1 n.1) and
corrected by the clerk on the court's record.

[7]On May 3, 2007, the court dismissed Colvert from the litigation.  (Doc. #77
at 2).

[8]According to Plaintiffs' Notice Motion, the relevant districts and states
identified by the supporting declarations are: (1) #159 in Alabama (Womack Decl.);

such knowledge), where she has worked as a store manager and within which district(s), how long she has held (or held) the position of store manager, the basis for her knowledge that "the duties and responsibilities of a Store Manager at Dollar General are the same and require equal skill, effort and responsibilities under similar working conditions regardless of the geographic location of the store (rural or urban), the physical size of the store, or the amount of sales generated by a store" (*see, e.g.,* Doc. #91 at Ex. A at Gamble Decl. ¶ 5), and how much she was (or is) compensated as a store manager.   The plaintiffs also state their belief that male store managers were (or are) paid more for the same job.  (*See, e.g.,* Doc. #91 at Ex. A at Gamble Decl. ¶ 7).

Dollar General "is a retailer of basic consumable goods, items that are frequently used and replenished by consumers, including cleaning supplies, health and beauty aids, foods/snacks, housewares, toys and basic apparel." (Doc. #99 at 6-7).  Dollar General operates more than 8,200 "stand-alone" stores in 35 states. (Doc.

---

(2) #23 in Virginia (Battle Decl.); (3) #56 in Mississippi (Bishop Decl.); (4) #146 in Ohio (Butler Decl.); (5) #143 (no state location indicated) (Gamble Decl.); (6) #11 located in Kentucky (Leonard Decl.); (7) #147 located in Pennsylvania (Miller Decl.); (8) #167 and district over store #2530 located in Missouri (Sims Decl.); (9) #482 located in Texas (Spicer Decl.); (10) #248 located in Georgia (Taylor Decl.); (11) #278 located in Nebraska (Eberle Decl.); (12) #117 located in Missouri (Davis Decl.); (13) #104 and #463 located in Iowa (Jones Decl.); (14) #396 located in Indiana (Joy Decl.); (15) #25 located in Ohio (Nutt Decl.); and (16) #669 located in North Carolina (Van Ostran Decl.).

#99 at 7).  Dollar General organizes its retail operations from the top down:  first into divisions (8), then into regions (approximately 50),[9] then into districts (560), and finally into stores.  (*Id.*).  Each district's size ranges from 10 to 25 separate stores. (*Id.*).

The district manager who oversees a particular district is, among other things, responsible for supervising the store managers who work in that district.  More specifically, Dollar General's evidence demonstrates that district managers are responsible for locating qualified candidates to fill any store manager vacancies and for making store manager salary decisions, including starting pay, annual merit increases, and off-cycle increases.  (Doc. #99 at 17-18).

Beyond the district level, Dollar General's opposition to Plaintiffs' Notice Motion indicates that a regional manager may in some cases provide approval over whether a formal offer is extended to a store manager within a particular district. (Doc. #99 at 19).  Also, "Dollar General's Compensation Department provides district managers with salary guidelines to use as a tool in setting [s]tore [m]anagers salaries."  (*Id.* at 20).  Since early 2004, Dollar General has expected district managers to follow the salary guidelines and to obtain permission from regional managers when seeking to go outside of them.  (*Id.*).  Additionally, performance

---

[9]*See* Doc. #100 at Ex. 3 ¶ 7.

evaluations relating to annual merit increases are reviewed and signed-off on by regional managers.  (*Id.* at 22).

Each regional manager reports to one of eight (8) division managers (who may also hold the title of vice-president).  Doc. #100 at Ex. 3 ¶ 8.  One entire state, such as Texas, for example, may constitute one complete division, while other divisions may include multiple states.  *Id.*  Finally, all division managers "report to the senior Vice President of Operations Tom Mitchell."  *Id.*

<u>Law</u>

This action is brought pursuant to the EPA amendment, 29 U.S.C. § 206(d), to the FLSA, which provides:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

*Id*.

Relatedly, § 216(b) of the FLSA, provides that:

> [a]n action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more

7

employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id*.

<u>Analysis</u>

This court uses the "two-step" approach to § 216(b) certification adopted by several other courts.  First, the court determines whether a collective action should be certified for notice purposes.  Then, after discovery is completed and the case is ready for trial, the court revisits the issue of certification.  As observed by the Eleventh Circuit regarding the scope of the court's determination during the so-called "notice stage" under the FLSA:

> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and **typically results in "conditional certification" of a representative class**.  If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in."  The action proceeds as a representative action throughout discovery.

*Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001) (emphasis added) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir.1995), *overruling on other grounds recognized by Rachid v. Jack In The Box, Inc.*, 376 F.3d 305 (5th Cir. 2004)); *see also Mooney*, 54 F.3d at 1214 n.8 ("At the notice stage, courts appear to require nothing more than substantial allegations that the putative

class members were together the victims of a single decision, policy, or plan infected by discrimination.") (internal quotations and citation omitted).   Therefore, certification, if granted at the preliminary stage, is always conditional.

In making the initial decision regarding certification, the court must consider whether certification will serve the purposes and putative benefits of a collective action under § 216. The Supreme Court has identified the main benefits of a collective action under § 216(b):

> A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity.

*Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 170, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989).  Accordingly, the court must balance the putative benefits against any prejudice to the defendant and any judicial inefficiencies that may result from allowing plaintiffs to proceed collectively.  *Bayles v. American Medical Response of Colorado, Inc.,* 950 F. Supp. 1053, 1067 (D. Colo.1996).

The Eleventh Circuit has identified two areas on which the plaintiff bears the initial burden in a case brought under the EPA: substantial similarity and same establishment.  More specifically,"[i]nitially, the burden rests with the plaintiff to show that an employer pays different wages to employees of opposite sexes 'for equal

work on jobs the performance of which requires equal skill, effort, and responsibility.'" *Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 590 (11th Cir. 1994) (quoting *Schwartz v. Florida Bd. of Regents*, 807 F.2d 901, 907 (11th Cir. 1987)).

> The statute also imposes on the plaintiff a "geographic limitation." Those employees against whom plaintiff compares herself must work in the same 'establishment' as the claimant. *Brennan v. Goose Creek Consolidated Indep. Sch. Dist.,* 519 F.2d 53, 57 (5th Cir. 1975). [A p]laintiff establishes a *prima facie* case by satisfying both the geographic and descriptive components of the test as applied to even one comparator. *Mitchell v. Jefferson County Bd. of Educ.,* 936 F.2d 539, 547 (11th Cir. 1991); *EEOC v. White & Son Enters.,* 881 F.2d 1006, 1009 (11th Cir. 1989).

*Mulhall*, 19 F.3d at 590.  Dollar General contends that Womack  and the EPA Battle Plaintiffs have failed to establish either the substantial similarity or the same establishment requirement due to the highly individualized and store-specific nature of compensation decisions.   Dollar General's argument regarding substantial similarity is based on its prevailing on its establishment argument.   Therefore, the court focuses on the "same establishment" issue first.

Womack has proposed a nationwide conditional class notice and argues that a decision to limit the class notice, including a determination of the establishment element, is premature at this time.  Plaintiffs' proposed notice is expressly directed to "Female Store Managers of Dolgencorp, Inc. d/b/a Dollar General who have held and/or currently hold the position of Store Manager on or after the date of receiving

10

this Notice." (Doc. #91 at Ex. B at 1).

The court's decision to conditionally certify a nationwide class for notice, is based on its reading and application of two (2) 1994 Eleventh Circuit cases to the facts of this case: *Meeks v. Computer Associates International*, 15 F.3d 1013 (11th Cir. 1994) and *Mulhall v. Advance Security, Inc.*, 19 F.3d 586 (11th Cir. 1994). The court is also guided by its prior conditional EPA collective action certification decision in *Collins v. Family Dollar*, 7:04-CV-0553-VEH (Doc. #137).

Turning first to *Meeks* and *Mulhall*, the Eleventh Circuit applied the facts of each case to the statutory term, "establishment." The Eleventh Circuit also focused on the definition of that term as promulgated by regulations of the Secretary of Labor, specifically, as "a distinct physical place of business rather than . . . an entire business or 'enterprise' which may include several separate places of business." 19 C.F.R. § 1620.9(a). However, at the same time, the Eleventh Circuit recognized in each decision that under *Brennan v. Goose Creek Consolidated Indep. Sch. Dist.*, 519 F.2d 53 (5th Cir. 1975),[10] there are situations in which a single establishment can include operations at more than one physical location, although such situations are "unusual".

---

[10]In *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent those cases decided by the Fifth Circuit prior to October 1, 1981.

In the first[11] of those decisions, the Eleventh Circuit held that the employer lacked "the degree of centralization necessary to justify treating all of the company's technical writers as working at a single establishment." *Meeks*, 15 F.3d 1013, 1017. The court found the defendant's evidence of centralization insufficient in face of the fact that "the ultimate decision respecting the hiring of the two persons really in issue, male and female, . . . was at the [local] level considering the [local] community and the office requirements." *Id*. That is, the court was persuaded that, among all the factors it considered, the fact that "[the two j]ob applicants [at issue were] screened and interviewed by local supervisors who then recommend[ed] the applicants and a suggested salary to the central personnel office, which [gave] final approval," was determinative. *Id*.

In contrast, in *Mulhall*, the Eleventh Circuit found that the plaintiff, who operated out of the defendant corporation's main offices, worked in the same establishment as three (3) project managers who performed services at military sites in different locations. The court found the following facts "dispositive": (1) the project managers "*reported to plaintiff*",[12] (2) the plaintiff "determined all cost items,

_____

[11]By a matter of weeks.

[12]19 F.3d 586, 591 (emphasis in original).

wages and benefit levels",[13] and (3) when another company offered one of the project managers a job, the corporate defendant "immediately increased [his] salary ... and added benefits sufficient to keep him",[14] thus "further demonstrat[ing] defendants' control."[15]   The court then explained that it was the combination of "centralized control and the functional interrelationship between plaintiff and the" project managers that allowed "a reasonable trier of fact [to] infer that . . . a single establishment existed for purposes of the EPA."  *Id.*

As applied to the facts of this case and based upon the evidence offered by Dollar General, Plaintiffs have at least preliminarily established sufficient evidence of centralized control over compensation for store managers as explained by *Meeks* and *Mulhall* for the purpose of sending notice out on a nationwide level.[16]  Although aspects of a store manager's position may involve determinations at the district level, the salary guidelines are generated at a corporate level and the regional managers play significant roles in determining, what the store managers (Womack, the EPA Battle

---

[13]*Id.*

[14]*Id.*

[15]*Id.* at 592.

[16]The court notes that unlike this case, neither *Meeks* nor *Mulhall* involves a putative class of opt-in plaintiffs.  Therefore, while the cases provide insight as to the same establishment issue generally, they do not provide controlling authority on the matter of conditional certification for the purposes of nationwide notice.

Plaintiffs, the purported opt-ins, and the male store managers) were paid initially and as raises. As summarized by the Vice President of Operations for Dollar General, William Bass, "the [r]egional managers participate in the process for hiring and promoting [s]tore [m]anagers (to a greater or lesser degree, depending on the preference of the particular [r]egional [m]anager) and also sign-off on [d]istrict [m]anager decisions relating to starting pay, performance evaluations, salary increases and bonuses." (Doc. #100 at Ex. 3 ¶ 7). Thus, the "functional relationship" for Dollar General, which governs the EPA establishment analysis under the conditional notice phase, is centralized from the standpoint of the involvement of Dollar General's Compensation Department and its fifty (50) regional managers regarding compensation for store managers. Therefore, certification of a conditional collective action on a nationwide basis for notice to potential opt-ins serves the purposes and putative benefits of a collective action under § 216 and balances against any prejudice caused to Dollar General.

The court next turns to the question whether Womack and the other plaintiffs have demonstrated that they are "similarly situated" to the purported opt-ins and to the proposed comparators, that is, the male employees of Dollar General who hold the same position of store manager.

In Equal Pay Act cases, we compare the jobs, not the individual

14

> employees holding those jobs. *Miranda,* 975 F.2d at 1533. Only the
> "skills and qualifications actually needed to perform the jobs are
> considered." *Id.* Comparators' prior experience is not relevant to the
> "substantially similar" inquiry. *Id.* The examination also rests on
> primary, as opposed to incidental or insubstantial job duties. *Id.* Job
> titles are a factor for consideration, but are not dispositive. *Id.* The
> plaintiff need not prove that her job and those of the comparators are
> identical; the test is one of substantiality, not entirety. *Id.* Nonetheless,
> in EPA cases "[t]he standard for determining whether jobs are equal in
> terms of skill, effort, and responsibility is high." *Waters v. Turner,
> Wood & Smith Ins. Agency, Inc.,* 874 F.2d 797, 799 (11th Cir. 1989).

*Mulhall*, 19 F.3d 586, 593.

All of Dollar General's arguments that the  similarly situated requirement has not been met are premised upon its position that each store, or alternatively each district, is a separate establishment.  However, as stated above, the court has found that the "establishment" requirement is met in this case at the corporate and regional level such that the sending of nationwide notice is appropriate.

Dollar General has correctly pointed out that Womack and the other plaintiffs have the burden to show that they are similarly situated.  "Initially, the burden rests with the plaintiff to show that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility.'" *Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 590 (11th Cir. 1994) (quoting *Schwartz v. Florida Bd. of Regents*, 807 F.2d 901, 907 (11th Cir. 1987)).  However at the same time, "the similarly situated requirement is not very

stringent in this circuit." *See Hipp*, 252 F.3d at 1218-19.

After examining the entire record, the evidence filed establishes, at least on a *prima facie* basis, that Womack and the EPA Battle Plaintiffs are similarly situated to the purported opt-ins and to the proposed comparators.  Therefore and similar to the court's conclusion on conditional collective action status in *Collins v. Family Dollar*, Plaintiffs have met their burden, as it exists at this stage of the litigation, that they are "similarly situated."

Dollar General's Motion to Drop is similarly premised upon its argument that each store (or alternatively each district) is a separate establishment and therefore no "similarly situated" opt-ins exist.  Dollar General also argues that a collective action involving multiple EPA plaintiffs is unworkable; however, it fails to translate any of these litigation difficulties into legal prohibitions against conditional nationwide collective status under the EPA.

Moreover, Plaintiffs have cited this court to two (2) Eleventh Circuit cases that clarify that the joinder standards under Rules 20 and 21 of the Federal Rules of Civil Procedure are not required to be satisfied in order to provide notice pursuant to the FLSA.  *See Hipp*, 252 F.3d at 1219 ("[T]he 'similarly situated' requirement of § 216(b) is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance).") (quoting *Grayson v. K-Mart Corp.*, 79 F.3d

16

1086, 1095 (11th Cir. 1996)); *Grayson*, 79 F.3d at 1095 ("Essentially we hold that the 'similarly situated' requirement of § 216(b) is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance).").

For the same reasons as stated as to the establishment issue, Dollar General's Motion to Drop is due to be denied without prejudice to a subsequent challenge upon further development of the record.   Additionally, Dollar General's Motion to Drop will be granted as to the claims of Warren.

Accordingly, **IT IS ORDERED** that:

1.      Plaintiffs' Notice Motion pursuant to 29 U.S.C. § 216(b) is **GRANTED**;

2.      The conditional nationwide collective action is certified for notice purposes only;

3.      The parties shall complete where necessary and file any objections to the attached forms of notice and consent within ten (10) calendar days from the date this Order enters.  Accordingly, Dollar General's previously filed objections to Plaintiffs' proposed notice (Doc. #102) are **MOOT**;[17]

4.      Dollar General **SHALL PROVIDE** Plaintiffs with the names and last

---

[17]Several of Dollar General's objections to the language in Plaintiffs' proposed notice are well-taken and the court has incorporated those valid points in the attached replacement form.

known physical addresses of all individuals in the putative EPA collective action within thirty (30) days from the entry date of this Order;

     5.    Dollar General **SHALL PROVIDE NOTICE** by First Class Mail to all putative opt-in Plaintiffs;

     6.    Dollar General's Motion to Drop is **GRANTED IN PART** and **DENIED IN PART** as set forth above; and

     7.    With no objection from Plaintiffs, Plaintiff Deandra Warren and her claims in this case are **HEREBY DISMISSED WITH PREJUDICE**.

     **DONE** and **ORDERED** this the 30th day of November, 2007.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

18