FILED
2008 Jun-16 PM 12:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| WANDA WOMACK, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO.: 2:06-CV-0465-VEH |
| ) | |
| DOLGENCORP., INC. d/b/a ) | |
| DOLLAR GENERAL, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

**I.   Brief Introduction**

Plaintiffs Wanda Womack, *et al.*, bring this gender pay discrimination case against Dolgencorp., Inc., *et al.* (sometimes collectively referred to as "Dollar General"), under (1) the Equal Pay Act ("EPA") (count I) (conditional "nationwide"[1] collective action certified on November 30, 2007 (*see* Doc. #111)) and (2) Title VII with the following counts of putative class allegations still pending: (i) disparate impact pursuant to a facially neutral policy (count II); (ii) disparate treatment as a pattern and practice (count III); and (iii) punitive damages (count IV). (*See generally* Doc. #116). The pending motion is: Plaintiffs' Motion to Compel Production of Pay

---

[1]As Plaintiffs note, Dollar General only operates in the thirty-five (35) most eastern states of the country. (Doc. #171 at 2 n.1).

Records ("Motion to Compel") (Doc. #171) filed on March 31, 2008.  Dollar General filed its response (Doc. #181) on April 17, 2008.

The court held a hearing on April 23, 2008, beginning at 2:00 p.m.  After the hearing, the court ordered additional actions and briefing on three (3) separate issues: (1) the appropriate temporal scope on Title VII class discovery; (2) a clarification of the documents sought by Plaintiffs in interrogatory no. 19 and any privileges that Defendants argue may apply; and (3) a restatement of requests for production nos. 9 and 11 by Plaintiffs to avoid duplication and explain how they seek discoverable information.  (Doc. #185).

The parties have filed their post-hearing briefs:  *See* Docs. #193, #194 filed by Plaintiffs; Docs. #195, #196 filed by Defendants in opposition; and Doc. #198 filed by Plaintiffs in reply.  A transcript from the hearing on Plaintiffs' Motion to Compel has also been filed into the record.  (Doc. #197).  As explained more fully below, Plaintiffs' Motion to Compel is due to be and is **HEREBY GRANTED IN PART** and **DENIED IN PART**.

## II.   Rulings Made During the Hearing on Plaintiffs' Motion to Compel

### A.   Scope of Discovery

Discovery of pay data relating to Title VII class certification is appropriate as to all female store managers that comprise the purported class.  Discovery of pay data

is similarly appropriate as to all male store managers as purported comparators.

**B.     Subject Areas of Discovery**

1.     For the reasons stated in open court, Dollar General's objections pertaining to interrogatory no. 1 not otherwise addressed in this written order are **OVERRULED**. Subject to the temporal ruling discussed below, Dollar General will be required to produce (in the most efficient form) consistent with Rule 33(d) of the Federal Rules of Civil Procedure, records that are responsive to this question, so long as Dollar General possesses responsive information.[2]

2.     For the reasons stated in open court, Dollar General's objections pertaining to interrogatory no. 6 not otherwise addressed in this written order and expressly including those based upon relevance are **OVERRULED**. Subject to any privilege log, Dollar General are hereby **ORDERED** to produce, no later than June 30, 2008, (in the most efficient form), consistent with Rule 33(d) of the Federal Rules of Civil Procedure, all records that are responsive to the following modified language for interrogatory no. 6:

Please set forth each and every factor and/or criteria that can have an impact

---

[2] Dollar General noted during the hearing that it could have difficulty producing responsive documents as to the "name/sex of person(s) making the decision to hire and/or promote said individual to position of store manager[.]" To the extent that Dollar General cannot produce responsive information to this interrogatory, then it should amend its interrogatory response to so clarify.

on pay for Store Managers, including but not limited to initial pay, bonuses, and pay raises for Store Managers from March 7, 2003, to present. If these factors/criteria are documented, please identify all documents in which they can be found.

      3.      Plaintiffs withdrew interrogatory no. 20 at the hearing, so the Motion to Compel as to this particular interrogatory is **DENIED** as **MOOT**.

      4.      For the reasons stated in open court, Dollar General's objections pertaining to request for production no. 1 not otherwise addressed in this written order are **OVERRULED**. Subject to any privilege log and the temporal ruling below, Dollar General is hereby **ORDERED** to produce, no later than June 30, 2008, all records responsive to request for production no. 1.

      5.      For the reasons stated in open court, Dollar General's objections pertaining to request for production no. 4 not otherwise addressed in this written order are **OVERRULED**. Subject to any privilege log and the temporal ruling below, Dollar General is hereby **ORDERED** to produce, no later than June 30, 2008, all records responsive to request for production no. 4.

      6.      During the hearing the parties agreed to work out their disagreements over request for production no. 8, so the Motion to Compel as to this particular request is **DENIED** as **MOOT**.

      7.      For the reasons stated in open court, any dispute over request for

production 13 relating to documents provided to or received from any expert who is expected to testify is premature. Therefore the Motion to Compel is **DENIED WITHOUT PREJUDICE** as to this particular request.

### III.    Rulings Based Upon the Parties' Post-Hearing Briefing

####    A.    Temporal Scope

Plaintiffs' Motion to Compel is **GRANTED** with respect to their requested temporal scope on pay data. Therefore, discovery of pay data will be permitted beginning March 7, 2003,[3] and carrying forward through the present, which encompasses three (3) years of pre-suit discovery and which is within the allowable approximate range of the three (3) to ten (10) years of discovery beyond the limitations period relating to the collection of Title VII cases that are cited in Plaintiffs' post-hearing brief. (Doc. #193 at 8).

Three (3) years of pre-suit discovery seems particularly reasonable, given the purported class nature of this litigation. *See, e.g., Obiajulu v. City of Rochester, Dept. of Law*, 166 F.R.D. 293, 296 (W.D.N.Y. 1996) ("Although plaintiff has alleged

---

[3]This time limitation should not relieve Defendants "from producing documents that may have been created previous to [March 7, 2003,] but reflect policies, procedures, or employment practices [that were in place] during the relevant time period as set forth herein." *See Obiajulu, infra*, 166 F.R.D. at 296. Moreover, this order should not be construed to limit Plaintiffs' right to access a particular store manager's entire personnel file that falls within the temporal range, "regardless of when the documents contained therein were created." *Id.*

**individual** disparate treatment in connection with his employment with the City, 'evidence relating company-wide practices may reveal patterns of discrimination against a group of employees, increasing the likelihood that an employer's offered explanation for an employment decision regarding a particular individual masks a discriminatory motive.'") (emphasis in original) (citations omitted); *id.* ("Given the allegations set forth in plaintiff's complaint, I believe the three year time period suggested by the City is reasonable and, therefore, to the extent plaintiff's demands seek documents from an earlier time period, the City's motion for a protective order is granted.") (emphasis added).

The court basis its decision in part upon Defendants' failure to cite to any case, controlling or otherwise, that restricts discovery in any type of Title VII case to the limitations period, much less one that establishes that it would be error for the court to allow the temporal scope sought by Plaintiffs in the context of a Title VII disparate impact/disparate treatment-pattern and practice case.  For example, *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 127 S. Ct. 2162, 2163 (2007), the primary case upon which Defendants rely, is an individual disparate treatment Title VII pay discrimination liability decision, not a scope of discovery one.  Nor is it a Title VII disparate impact or pattern and practice case, which is also sometimes referred to as a "hybrid Rule 23(b)(2) class action." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546,

1554 (11th Cir. 1986).[4]

To the extent that *Ledbetter* even discusses discriminatory evidence occurring outside the scope of a timely charge, it reiterates the Supreme Court's conclusion in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), that "'[t]he existence of past acts and the employee's prior knowledge of their occurrence . . . does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are

---

[4]As the Eleventh Circuit has recently stated regarding pattern and practice cases under Title VII:

> Section 707(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-6(a), entitles the Government to bring a pattern or practice claim on behalf of a class of similarly situated employees for declaratory and injunctive relief against an ongoing act of intentional discrimination in violation of Title VII. A pattern or practice claim for such relief may also be brought under Title VII as a class action, pursuant to Federal Rule of Civil Procedure 23(b)(2), by one or more of the similarly situated employees. *See Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 876 n.9, 104 S. Ct. 2794, 2800, 81 L. Ed. 2d 718 (1984) ("[I]t is plain that the elements of a prima facie pattern-or-practice case are the same in a private class action [as when the Government brings the claim]."). In addition to praying for declaratory and injunctive relief, the complaint may also seek back pay on behalf of individual class members who have been injured by the employer's discriminatory practice. 42 U.S.C. § 2000e-5(g)(1).

*Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 964-64 (11th Cir. 2008) (footnotes omitted).

themselves timely filed.'" 127 S. Ct. at 2174; *see also Morgan*, 536 U.S. at 113 ("Nor does the statute bar an employee from using the prior [*i.e.*, time-barred] acts as background evidence in support of a timely claim.").

Additionally, *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300 (5th Cir. 1973), the primary case upon which Plaintiffs rely, provides controlling authority that the failure to allow a plaintiff to pursue discovery on historical statistical information warrants a reversal in a Title VII pattern and practice case:

> "In the problem of racial discrimination, <u>statistics often tell much</u>, and Courts listen." Our wide experience with cases involving racial discrimination in education, employment, and other segments of society have led us to rely heavily in Title VII cases on the empirical data which show an employer's overall pattern of conduct in determining whether he has discriminated against particular individuals or a class as a whole.
>
> . . .
>
> The importance of obtaining an overall statistical picture of an employer's practices with regard to both Black and White employees does not depend on the presence of an alleged "pattern or practice" or a valid charge of class discrimination or class action. We categorically rejected this notion in *Georgia Power v. EEOC*, *supra*. <u>There the EEOC sought historical, statistical information</u> regarding both Black and White employees of Georgia Power.
>
> . . .
>
> In *Jacksonville Terminal*, *supra*, we said that "deprived of an historical overview in these situations, Justice would surely be blind," <u>Were Justice to be deprived of an historical overview</u> of the industrial context in which Claxton Burns was discharged, she could not-as she

8

must-be color blind.

. . .

Since we hold that the information sought by plaintiff's interrogatories was discoverable, we have withheld ruling on the merits of Burns' appeal on issues (ii) and (iii). <u>On remand, the trial court should allow the parties to proceed directly to properly complete the discovery process, and then reevaluate Burns' class action</u> in light of the information available to him at that time, in accordance with *Johnson v. Georgia Highway Express*, 5 Cir., 1969, 417 F.2d 1122.

483 F.2d at 305, 306, 307, 308 n.11 (internal and other citations omitted) (emphasis added).

More recently, the Title VII pattern and practice <u>and</u> disparate impact case of *Cooper v. Southern Co.*, 390 F.3d 695 (11th Cir. 2004) emphasizes the heavy statistical burden that a plaintiff must meet in order to satisfy the applicable Rule 23 class action standards:

> To establish a "pattern or practice" of disparate treatment, the plaintiff must show that intentional discrimination was the employer's "standard operating procedure." *Joe's Stone Crab*, 220 F.3d at 1274 (explaining different types of discrimination claims in context of gender discrimination). The plaintiff can prove that discrimination was the standard operating procedure "<u>through a combination of statistics and anecdotes</u>." *Id.* To prove disparate impact, a plaintiff must establish the existence of a <u>statistically significant disparity</u> among members of different groups affected by a type of employment decision; a specific, facially neutral employment practice involved in the decision; and a causal nexus between the facially neutral employment practice and the <u>statistically significant disparity</u>. *Id.*

9

*Cooper*, 390 F.3d at 716 (footnote omitted) (emphasis added). Therefore, limiting Plaintiffs' access to pay data creates an argument that such a restriction hampers their ability to satisfy the statistically significant disparity demands of *Cooper*.

Moreover, Defendants' post-hearing brief focuses only on the appropriate starting point for discovery, *i.e.*, Plaintiffs' beginning date of March 7, 2003, versus Defendants' proposal of November 1, 2006; therefore, they have apparently abandoned any argument about the appropriate ending date for discovery and discovery should proceed through the present pursuant to the forward tolling rule for Rule 23 class actions cited by Plaintiffs.

Dollar General also unpersuasively maintains that Plaintiffs have failed to meet their good cause burden under Rule 26(b)(1). Rule 26(b)(1) states in full:

**(b) Discovery Scope and Limits.**

> **(1)  *Scope in General.*** Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule

      26(b)(2)(C).

Fed. R. Civ. P. 26(b)(2). The court does not agree with Defendants that Plaintiffs' class discovery is irrelevant to their claims as their complaint clearly makes <u>class claims</u>. Under such circumstances, the Rule 26(b)(2) good cause standard is not even triggered. However, to the extent the good cause provision does apply, then Plaintiffs have met this burden by demonstrating the importance of obtaining and analyzing a statistically significant amount of historical pay data in the context of pursuing a Title VII class action.

      Finally, as to Defendants' burdensomeness argument, they make no effort to cure the deficiencies noted during the hearing that the declarations in support of the objection maintain that <u>subdividing the data by districts</u> would be burdensome, but indicate nothing about producing the information without such subdivision. (*See, e.g.*, Doc. #67 at Lampe Decl. ¶¶ 22-29; *id.* at Shrum Decl. ¶¶ 3-6). Defendants filed no new or supplemental affidavits relating to burdensomeness post-hearing and instead merely incorporated by reference the briefing and evidentiary materials previously filed, which the court has already determined are inadequate. *See Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985) ("To be adequate, objections which serve as the basis of a motion for protective order under Fed. R. Civ. P. 26 should be 'plain enough and specific enough so that the court can

understand in what way the interrogatories are alleged to be objectionable.' . . . No mention of the Rule 26(b) factors is made in sufficient specificity to allow the magistrate and the district court, absent an abuse of discretion, to grant the motion for a protective order. The recitation of expense and burdensomeness are merely conclusory.") (internal citations omitted); *see also Obiajulu*, 166 F.R.D. at 295 ("The burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal construction of the discovery rules found in the Federal Rules of Civil Procedure."); *id.* ("A party opposing a discovery request cannot make conclusory allegations that a request is irrelevant, immaterial, unduly burdensome or overly broad. Instead the party resisting discovery must show specifically how each discovery request is irrelevant, immaterial, unduly burdensome or overly broad."). Therefore, Defendants have not met their Rule 26 burden in relying upon unduly burdensome as a basis for limiting the temporal scope.[5]

---

[5] Defendants also maintain that it is inconsistent for Plaintiffs to simultaneously pursue an EPA collective action and a Title VII class action. However, this is a class certification opposition argument, not a discovery one. Moreover, the Eleventh Circuit's decision in *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518 (11th Cir. 1992), which expressly permits and explains the contours of litigating both an individual Title VII pay discrimination claim along with an EPA one, counters against this position. *See id.* at 1528 ("After considering the Supreme Court's decision in *Gunther*, and the legislative history of Title VII and the Equal Pay Act, we believe that the *McDonnell Douglas/Burdine* approach to disparate treatment is the appropriate framework for evaluating Miranda's claim of gender-based wage discrimination [under Title VII].") (citation omitted); *Miranda*, 975 F.2d at 1530

B.      **Interrogatory No. 19**

Plaintiffs' Motion to Compel is **GRANTED IN PART** and **DENIED IN PART** as to interrogatory no. 19. As Plaintiffs state in their reply brief, at issue under interrogatory no. 19 are essentially three (3) types of information: (1) the underlying pay-related facts and data provided to Drs. Siskin and Griffin; (2) the analyses conducted by Drs. Siskin and Griffin based upon this data; and (3) any attorney's opinions and advice based upon the reports prepared by Drs. Siskin and Griffin, which category of information Plaintiffs do not seek. (Doc. #198 at 21). Defendants should be required to produce the pay data described in the first subset because (1) they seek pure pay-related facts and (2) Defendants have not carried their burden in demonstrating how either the attorney-client, work product, or self-critical analysis privilege[6] attaches to them.

The second category, however, does not involve pure historical facts and the

---

("We are aware that other circuits view the relationship between Title VII and the Equal Pay Act differently.") (citations omitted); *id.*, at 1533 ("The Equal Pay Act prescribes a form of strict liability:  Once the disparity in pay between substantially similar jobs is demonstrated, the burden shifts to the defendant to prove that a 'factor other than sex' is responsible for the differential.  If the defendant fails, the plaintiff wins.  The plaintiff is not required to prove discriminatory intent on the part of the defendant.") (citation omitted).

[6]To the extent that the Eleventh Circuit would even recognize the self-critical analysis privilege.

13

analyses were generated at the direction of in-house counsel and retained outside counsel for Dollar General in response to EEOC charges the first round of which was filed in 2002 and the second collection in 2004.  Under such circumstances, Defendants have made a persuasive showing that the information sought by Plaintiffs is protected under the attorney-work product privilege and, relatedly, Plaintiffs have failed to mention much less demonstrate that they have a substantial need for the information.[7]  *See* Rule 26(b)(3); *Abdallah v. Coca-Cola Co.*, No. CIV A1:98CV3679RWS, 2000 WL 33249254, at *8 (N.D. Ga. Jan. 25, 2000) ("In short, this Court concludes that all of these documents fall within the protection of Rule 26(b)(3), and that no showing of substantial need has been made as required to overcome the prima facie protection provided by the doctrine[.]").[8]

Accordingly, as to the second item Defendants are hereby **ORDERED** to provide a privilege log, no later than July 18, 2008, relating to any responsive

---

[7]In finding that the work-product doctrine applies to this information, the court will not have to reach the questions of whether the attorney-client or the self-critical analysis privilege—the existence of which is still an open question in the Eleventh Circuit—is triggered.

[8]Plaintiffs' waiver argument based upon Defendants' failure to provide a privilege log is not persuasive given the overall context of the parties' discovery dispute and the court's specific instructions to Defendants to brief the privilege issues and then address the privilege log subsequent to (and depending upon) the court's ruling as to privilege on Plaintiffs' Motion to Compel.

information that they are withholding on the grounds of any privilege, but are not required to answer the question and/or produce the privileged records with the explicit understanding that if they elect not to produce the withheld information and/or documents then Defendants will not be entitled to rely upon any of them throughout the course of the litigation, including at trial. Put differently, to the extent that Defendants believe that any of the withheld information and analyses may be helpful to their defense of this case, then they should produce the materials to Plaintiffs, subject to the parties' agreed-to protective order, *see* Doc. #17, or they will lose the right to rely upon such entirely.

The third portion of interrogatory no. 19 is **DENIED** as **MOOT** because Plaintiffs concede in their reply brief that they do not seek any of the legal advice information.

### C. Requests for Production Nos. 9 and 11

Defendants are hereby **ORDERED** to produce, no later than June 30, 2008, all records responsive to requests for production nos. 9 and 11 as revised by Plaintiffs and subject to the temporal restriction above. Plaintiffs provided clarification of these requests as set forth in their initial post-hearing brief, *see* Doc. #193 at 39-40, and Defendants raised no corresponding objections in their response.

Accordingly, under revised request for production no. 9, Defendants are

**ORDERED** to produce, no later than June 30, 2008, as non-duplicative, each store manager's: (1) employment history, (2) bonuses, (3) applications, (4) performance, (5) jobs held with defendant, (6) hours worked, (7) discipline, (8) separation, (9) reason for separation, (10) education, (11) previous experience, (12) district manager's name, (13) region/division number, (14) name of all employees in the store manager's store, (15) payroll budget, (16) store budget, and (17) any other personnel or compensation information.

Under revised request for production no. 11, Defendants are **ORDERED** to produce, no later than June 30, 2008, as non-duplicative, all records of each store manager's productivity and schedules.

### IV.  Conclusion

As explained above, Plaintiffs' Motion to Compel is hereby **GRANTED IN PART** and **DENIED IN PART**.

The parties are **REMINDED** about the Second Scheduling Order (Doc. #190) that was entered in the case on April 29, 2008, which contains several deadlines, the calculation of which are expressly tied to the entry date of this order.

**DONE** and **ORDERED** this the 16th day of June, 2008.

                                              _____
                                              **VIRGINIA EMERSON HOPKINS**
                                              United States District Judge