FILED
2013 Aug-02  PM 03:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **WANDA WOMACK, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **LEAD CASE NUMBER:** |
| | ) | **2:06-cv-0465-VEH-RRA** |
| | ) | |
| | ) | |
| **DOLGENCORP., INC.; d/b/a** | ) | |
| **DOLLAR GENERAL, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

| | | |
|---|---|---|
| **TINA M. WOOD, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **MEMBER CASE NUMBER:** |
| | ) | **2:08-cv-1602-VEH-RRA** |
| | ) | |
| | ) | |
| **DOLGENCORP., INC.; d/b/a** | ) | |
| **DOLLAR GENERAL, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

## I.      INTRODUCTION

This case comes before the court on the Plaintiffs' Motion to Enforce the

Settlement Agreement and, in the Alternative, for a Declaratory Judgment.  (Doc.

462).  The motion actually seeks relief for plaintiffs' <u>counsel</u>, as to the following

respondents <u>who were not parties to this action</u>:  Allen Schreiber; Mark Petro;

Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.; and Schreiber and Petro, P.C. The movants claim that "[t]he Respondents' [sic] have demanded payment of fees from Class Counsel pursuant to the attorney's [sic] fee portion of the Settlement Agreement the Court approved in this action." (Doc. 462, at 3). They ask the court to determine whether the respondents are entitled to attorneys' fees in this action. The movants invoke this court's "continuing jurisdiction to enforce the Settlement Agreement in this case (Doc. 455 at 7) and the [c]ourt's supplemental jurisdiction under 28 U.S.C. §1367(a)." (Doc. 462, at 1).

In response to the motion, the respondents have filed a brief, an "Answer and Counterclaim," and evidentiary materials. (Docs. 464-466). The movants have replied with another brief and evidence of their own. (Docs. 468, 469). The respondents have filed a motion for leave to file a surreply (doc. 470), which the movants have opposed (doc. 471). The respondents have filed a reply to the opposition to the motion for surreply. (Doc. 472).

Because it does not have jurisdiction over this controversy, the motions will be **DENIED** as **MOOT**.

## II.   BACKGROUND AND PROCEDURAL POSTURE

On July 23, 2012, this court approved an initial attorneys' fee award for the movants in the amount of $3.25 million. (Doc. 455). Thereafter, the court approved

an additional $3 million attorneys' fee award to the movants.   (Doc. 461).

Respondents seek to recover from the movants a portion of the combined $6.25

million attorneys' fee award.

Although this court's jurisdiction is not disputed by the parties, the court

always has the "power" and "obligation" to examine whether it has subject matter

jurisdiction.  *Moreno Farms, Inc. v. Tomato Thyme Corp.*, 490 F. App'x 187, 188

(11th Cir. 2012) (citing *Fitzgerald v. Seaboard Sys. R.R., Inc.*, 760 F.2d 1249, 1251

(11th Cir.1985) and *Philbrook v. Glodgett*, 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d

525 (1975)).

## III.   ANALYSIS

### A.   This Court Lacks Jurisdiction

This court has "original jurisdiction of all civil actions where the matter in

controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and

is between . . . citizens of different States[.]" 28 U.S.C. § 1332.  Federal courts also

have original jurisdiction to hear a controversy "arising under the Constitution, laws,

or treaties of the United States."   28 U.S.C.A. § 1331.  Although the amount in

controversy in this attorneys' fee dispute is more than $75,000, jurisdiction under

section 1332 fails because at least one party on both sides of the dispute is a citizen

of Alabama.  Further, "[a]ttorneys' fee arrangements . . . are matters primarily of state

3

contract law." *Novinger v. E.I. DuPont de Nemours & Co., Inc.*, 809 F.2d 212, 217 (3d Cir. 1987). Accordingly, there is no federal question jurisdiction under section 1331.

Still, the movants insist that this court has "ancillary jurisdiction" over the dispute. "[T]he doctrine of ancillary jurisdiction . . . recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378, 114 S. Ct. 1673, 1676, 128 L. Ed. 2d 391 (1994). "In passing 28 U.S.C. § 1367, part of the Judicial Improvements Act of 1990, Congress codified under the name of 'supplemental jurisdiction' the caselaw doctrines of 'pendent' and 'ancillary' jurisdiction." 28 U.S.C. § 1367 (commentary); *see also, Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1563 n. 3 (11th Cir. 1994) ("Formerly known as pendent and ancillary jurisdiction, such grounds for the exercise of federal subject matter jurisdiction have now been codified in 28 U.S.C. § 1367."). Title 28 U.S.C. § 1367 provides:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C.A. § 1367(a).

The Eleventh Circuit recognizes supplemental jurisdiction over fee disputes between <u>attorneys</u> and <u>clients</u>.  In *Broughten v. Voss*, 634 F.2d 880 (5th Cir. 1981),[1] Judge Tjoflat noted that "there is a long tradition of sustaining jurisdiction to determine fees due an attorney dismissed by a client in a pending action." *Broughten,* 634 F.2d at 882.  He then explained:

> The basis for exercise of this ancillary jurisdiction is the responsibility of the court to protect its officers . . . and the power of the court "to do full and complete justice." . . . [When counsel is discharged] it is incumbent on the court to assure that the prosecution of the lawsuit before it is not disrupted by the withdrawal of counsel, and that the withdrawal of counsel is for good cause. This by itself is adequate to protect the interests of the parties before the court and assure fair treatment of the court's officers. If, upon withdrawal, counsel is unable to secure payment for his services, the court may assume jurisdiction over a claim based on a charging lien over the proceeds of the lawsuit.

*Id.* at 882-83.  Citing *Broughten*, and addressing the matter in the context of the supplemental jurisdiction statute, the Eleventh Circuit recently stated that "[t]he existence of an attorney's lien against a party's recovery in a lawsuit is part of the same case or controversy as the underlying lawsuit." *Moreno Farms*, 490 F. App'x

---

[1] In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

at 188[2] (*citing Broughten*, 634 F.2d at 883); *Doggett v. Deauville Corp.*, 148 F.2d 881, 883 (5th Cir.1945)); *see also, Zaklama v. Mount Sinai Medical Center,* 906 F.2d 650 (11th Cir.1990) (adjudicating a post-judgment attorneys' fee dispute under Florida law charging liens).

These cases are distinguishable from the instant case. *Broughten* and *Moreno Farms* both involved an attorney's fee lien against the attorney's client/party. The Eleventh Circuit found jurisdiction present in both cases. *Broughten* explained that supplemental jurisdiction existed because the court must "protect its officers" to ensure that they are paid, lest the proceedings be "disrupted." In the instant case, the case is closed. There are no proceedings to be "disrupted." Further, the fee to the plaintiffs' attorneys has already been approved and awarded by the court. A decision on the dispute between the movants and the respondents cannot have any impact on the amount of money that the plaintiffs will receive or that the defendants will pay. Rather, the only issue is whether the plaintiffs' attorneys must pay to other attorneys some portion — and, if so, how much — of the attorneys' fees already awarded by this court.

The Eleventh Circuit has not spoken on the issue of whether or not, absent an

---

[2]"Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

6

attorney lien, supplemental jurisdiction exists as to fee disputes between lawyers representing the same clients. The court has found the opinions of only three circuits which have addressed this issue.

In the Second Circuit case of *Grimes v. Chrysler Motors Corp.,* 565 F.2d 841 (2d Cir. 1977), the claim was for personal injury. After several days of trial, the case was settled with court approval. Hirschhorn was attorney of record for Mr. and Mrs. Grimes, the plaintiffs in the *Grimes* litigation. Edelman was the Grimeses' trial counsel. On March 2, 1977, before all of the settlement checks had been received, Edelman commenced a suit in state court, naming Hirschhorn and the plaintiffs as defendants. Hirschhorn moved that the federal court require deposit of the settlement funds into the court's registry and supervise the distribution of the funds among the Grimeses, Edelman, and Hirschhorn. The court granted the motion and held a hearing on the matter of disbursements, after which it rejected some of Edelman's claims for disbursements, and set out how the money should be disbursed.

Edelman appealed, contending that the district court lacked subject matter jurisdiction to supervise the distribution of the settlement funds. He argued that, "although the determination of the disbursements questions would affect the distribution of the monies, the controversy was a simple contract dispute between Edelman and Hirschhorn, both citizens of New York State; thus, he claim[ed] that no

7

federal question or diversity jurisdiction [existed]." *Grimes,* 565 F.2d at 843.

The Second Circuit held that ancillary jurisdiction was present, writing:

The Supreme Court has established that the exercise of ancillary jurisdiction is appropriate where the subsidiary controversy "has direct relation to property or assets actually or constructively drawn into the court's possession or control by the principal suit." *Fulton National Bank of Atlanta v. Hozier*, 267 U.S. 276, 280, 45 S.Ct. 261, 262, 69 L.Ed. 609 (1925). Under these standards, the District Court's distribution of the Grimes settlement funds and its determination of appropriate disbursements was clearly ancillary to its approval of the settlement in the case. *See also Schmidt v. Zazzara*, 544 F.2d 412 (9th Cir. 1976); *State of Iowa v. Union Asphalt & Roadoils, Inc.*, 409 F.2d 1239 (8th Cir. 1969).

*Id.* at 844.

The Fourth Circuit addressed the issue in *Taylor v. Kelsey*, 666 F.2d 53 (4th Cir.1981). In that case, the court summarized the facts as follows:

Kelsey [an attorney] instituted an action against Allied Chemical Corporation and others on behalf of a large group of plaintiffs who were damaged when the defendants released the pesticide Kepone into the James River at Hopewell, Virginia. In August, 1979, Kelsey decided to bring in Taylor, a Richmond, Virginia attorney, as co-counsel because of Taylor's prior experience in Kepone litigation. Correspondence between the two indicates that Taylor was to receive one-third of Kelsey's contingent fee if the case settled, and one-half of the fee if the case went to trial.

In October, 1979, Allied Chemical proposed a settlement. Kelsey decided that he no longer needed Taylor's assistance, and informed Taylor that their association was terminated. Taylor asserted that he was entitled to one-third of the contingent fee, and gave written notice of his claim for an attorney's lien pursuant to Virginia Code § 54-70.

On April 2, 1980, Taylor filed a motion to intervene in the Kepone litigation and to add Kelsey as an intervenor for the purpose of settling the fee dispute. The district court found that the dispute bore no relationship to the Kepone litigation and had no effect upon either the litigants or the outcome of the case. The court further found that it did not have control of the funds in controversy, and that neither judicial economy nor fairness militated in favor of federal jurisdiction. Upon these findings, the court concluded that the fee dispute was outside its ancillary jurisdiction.

*Taylor,* 666 F.2d at 54.   The Fourth Circuit agreed with the district court, writing:

We agree with the district court. The fee dispute did not arise as a matter of necessity from anything which occurred in the proceedings of the Kepone litigation, nor did the district court have control over the fee in the sense that the court was required to establish and distribute a fee. Instead, the controversy arose purely from a private contract dispute between two Virginia residents. Under these circumstances, we see no basis for ancillary jurisdiction.

*Id.*

The movants cite the Seventh Circuit's opinion in *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294 (7th Cir. 1995).  In that case, the plaintiff, Baer, filed a Title VII lawsuit against her employer.  Baer originally was represented in her suit by a Chicago law firm, but she was not satisfied with the representation and sought the advice of another attorney.  She contacted Antoniono, who did not have the expertise to assist her, but offered to help her find another attorney.  Antoniono found Strauss, a partner at the Chicago law firm of Davis, Miner, Barnhill & Galland ("Davis Miner"), who agreed to handle Baer's case.  The three then negotiated a retainer

agreement which included

> a "fee-sharing" arrangement between Mr. Strauss and Mr. Antoniono. Although it was understood that Mr. Strauss would do most of the work, Mr. Antoniono was to be compensated for his referral through the fee-sharing arrangement. The arrangement provided that Mr. Antoniono would receive 10% of the first $100,000 recovered in fees and 40% of any amount recovered in excess of $100,000.

*Baer*, 72 F.3d at 1296.  The court wrote:

> Ms. Baer's case settled in early 1994. During the course of the litigation and settlement, however, a dispute arose between Mr. Antoniono and Mr. Strauss concerning the fees to which each was entitled. The settlement agreement, negotiated by Mr. Strauss on behalf of Ms. Baer, recognized the dispute. Under its terms, the fees for each attorney were calculated by multiplying the number of hours worked by the hourly rate of each. Mr. Antoniono received the full calculated amount of his fees. Davis Miner received all but $50,000 of its calculated fees. In its order approving the settlement and dismissing the case with prejudice, the district court directed that this disputed amount, $50,000, be paid into an escrow account held by the clerk of the court. The amount was subsequently reduced to $42,341.

*Id.*  Eventually, the district court awarded the disputed fees to Antoniono under the terms of the original fee-sharing agreement.

On appeal, the Seventh Circuit raised the jurisdiction issue *sua sponte*.  After discussing the concept of ancillary jurisdiction and 28 U.S.C. § 1367, the court reviewed the *Grimes* and *Taylor* opinions.  It then wrote:

> [a]lthough the facts before the *Taylor* court required a different result, the approach of the Second Circuit and the Fourth Circuit are quite compatible. Our case is much more similar to the situation that was before the Second Circuit in *Grimes*. Here, in contrast to *Taylor,* <u>the</u>

district court exercised affirmative control over the disputed fee. <u>The settlement agreement,</u> which was brought to the district court for its approval and for an order dismissing the case, <u>specifically acknowledged the dispute and included a provision for resolving it</u>. The court had jurisdiction to approve the parties' independently negotiated settlement, and that jurisdiction of necessity encompassed the terms of the settlement agreement. We thus conclude that the court did not overreach its authority to resolve the dispute concerning the fees. Moreover, the underlying litigation was a Title VII case, and Title VII vests in the district court broad authority to award attorney's fees to the prevailing party. 42 U.S.C. § 2000e-5(k). This authority over fees is not extinguished by the parties' settlement of their case; <u>a district court may decline to approve a settlement if it determines that the amount of fees set by the parties is unreasonable</u>. *Foster v. Boise-Cascade, Inc.,* 577 F.2d 335 (5th Cir.1978).

　　　　Under these circumstances, we hold that this dispute was part of the same "case or controversy" as the underlying litigation. The district court, therefore, had supplemental jurisdiction to hear this dispute.

*Id.* at 1301 (emphasis supplied) (footnote omitted).

Importantly, in 2007, the Seventh Circuit distinguished *Baer* on facts similar to those in the instant case. In *Cooper v. IBM Pers. Pension Plan*, 240 F. App'x 133, (7th Cir. 2007), the law firm of Carr Korein Tillery, LLC, was lead counsel in an ERISA action. Before the case ended, Carr, one of the partners in that firm, withdrew from the partnership. Once the case resolved, Carr and his former firm then disagreed over the distribution of the fee. The Seventh Circuit found no jurisdiction, writing:

As the district court concluded, there is no subject-matter jurisdiction. The dispute between Carr and his ex-partners arises under a contract. It is unrelated to the dispute between Cooper and IBM, so it cannot be adjudicated under the supplemental jurisdiction. *See* 28 U.S.C. § 1367

(only claims that are part of a single case or controversy come within the supplemental jurisdiction). *See also, e.g., Kokkonen v. Guardian Life Insurance Co. of America,* 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (disputes arising from separate contracts require an independent grant of jurisdiction). <u>The exception for agreements incorporated into the judgment does not apply here. *See Baer v. First Options of Chicago, Inc.,* 72 F.3d 1294 (7th Cir.1995), which holds that a controversy about the allocation of attorneys' fees may be resolved in federal court only if the original judgment covers that subject.</u> *See also Bounougias v. Peters,* 369 F.2d 247 (7th Cir.1966).

*Id*. at 135 (emphasis added).[3]

*Cooper* was distinguished by the Tenth Circuit in *Edwards v. Doe*, 331 F. App'x 563 (10th Cir. 2009), a case in which an attorney lien <u>was</u> claimed.  In *Edwards*, the law firm of Holden & Carr entered into a fee agreement with Edwards, the plaintiff.  Capron, then a member of Holden & Carr, negotiated and prepared the Fee Agreement and executed it on behalf of the firm.  Holden & Carr then filed a personal injury lawsuit in federal district court on behalf of the plaintiff.  The caption of the complaint included the notation: "Attorney Lien Claimed."  Capron acted as the lead attorney at trial, and, on February 18, 2005, the jury rendered a $1.5 million verdict in favor of the plaintiff.

On June 30, 2005, Capron resigned from Holden & Carr and started a new

---

[3]The court does not find the later Seventh Circuit opinion of *Elusta v. City of Chicago*, 696 F.3d 690 (7th Cir. 2012), also cited by the movants, to be persuasive on this issue, as it dealt with a <u>party</u> "seek[ing] to compel two of his former attorneys . . . to turn over some of the fee award to him."  *Id.* at 692.

firm.  On July 11, the plaintiff requested his file be transferred from Holden & Carr

to Capron's new firm.  At the time of the request, the plaintiff had recovered no

money from the defendants and post-trial proceedings were still pending.  Capron was

the plaintiff's attorney through post-trial proceedings, during settlement discussions,

and throughout the appeal of the case.  On February 13, 2006, final judgment was

entered.

Capron and the firm of Holden and Carr disputed the amount of fees which

should go to each.  The court wrote:

> On July 3, 2006, Holden & Carr filed an application for hearing on
> enforcement of its attorney's lien. Before the court ruled on the
> application, the plaintiff filed a motion to dissolve the claimed attorney's
> lien. On September 25, 2006, Holden & Carr moved for summary
> judgment seeking enforcement of its lien. Capron & Edwards filed a
> cross-motion for summary judgment.
>
> The district court granted Holden & Carr's motion and denied
> Capron & Edwards's cross-motion.

*Id.* at 566-67.  Distinguishing *Cooper*, the court held:

> The fee dispute here forms part of the same case or controversy as the
> plaintiff's personal injury litigation because it involves the two firms
> that represented the plaintiff in that action and involves an attorney's
> lien claimed in that action. Moreover, and unlike in *Cooper,* the plaintiff
> is a party to the contract at issue (the Fee Agreement) and our
> interpretation of that contract could impact the plaintiff, even though he
> has disavowed any interest in the funds.

*Id.* at 571 (emphasis added).

13

After careful consideration of these opinions, the court is convinced that this attorneys' fee dispute is not part of the same case or controversy so as to give the court supplemental jurisdiction under 28 U.S.C. § 1367(a).  The court's decision here does not relate to the distribution of settlement funds from the court's registry, as was the case in *Grimes*.  Similarly, it is not like the *Baer* case, where the dispute itself was set out in the very settlement agreement which the court approved.  Finally, the case is unlike *Edwards,* where the plaintiff was a party to the contract at issue, there was a lien which had to be resolved, and the court's decision could impact the plaintiff's recovery.

The case more closely resembles the *Taylor* case, in which the Fourth Circuit found no jurisdiction.  As in *Taylor*, the controversy here arose purely from a private contract dispute between attorneys who were not parties in the prior federal case.  In this case, as in *Taylor*, the fee dispute does not arise as a matter of necessity from anything which occurred in the federal case.  Further, this court has control over the fee award only in the sense that it has already approved its reasonableness as a whole.  There are no funds at issue in this court's registry.  This court does not have control over what happens to the fee now that it has been approved.  Indeed, no decision by this court on how that fee should be disbursed would impact the settlement in any way.  The fee will not increase, the class share will not change, and the overall

14

settlement will not be affected.  Thus, supplemental jurisdiction does not exist to decide this fee dispute.

Further, this decision conforms to the Supreme Court's discussion of supplemental jurisdiction in *Kokkonen v. Guardian Life Insurance*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).  In that case, the parties had filed a stipulation of dismissal signed by all parties, pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii).  A month later, one of the parties filed a motion with the district court, requesting that the court enforce the terms of the settlement agreement.  The Supreme Court noted that the district court's order dismissing the suit did not incorporate the terms of the settlement agreement or contain a provision retaining jurisdiction over the enforcement of the agreement.  The Court held that, as a result, no federal jurisdiction existed over the enforcement of the settlement terms.  *Kokkonen*, 511 U.S. at 380-81.  Although the Court noted that a district court may, in its discretion, set forth as one of the terms of its order its continuing jurisdiction over the settlement agreement, the district court had not set out such a term in its order.  Under those facts, the Court held that the district court did not have ancillary jurisdiction to enforce the settlement agreement.  *Id*.

The Court discussed its prior holdings relating to the scope of a court's ancillary jurisdiction as follows.

> Generally speaking, we have asserted ancillary jurisdiction (in the very broad sense in which that term is sometimes used) for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.

*Id*. at 379-380 (internal citations omitted).  As the Court did in *Kokkonen*, this court determines that neither "purpose" is presented by the current dispute.

As to the first purpose, the facts underlying the plaintiffs' Fair Labor Standards Acts claims and those underlying respondents' claim for a portion of plaintiffs' counsel's fee award have nothing to do with each other.  As to the second purpose, relating to the court's power to protect its proceedings and vindicate its authority, "the power asked for here is quite remote from what courts require in order to perform their functions."  *Id*. at 380.  "The situation would be quite different if the [movants' and respondents' dispute] had been made part of the order [approving the settlement agreement].... In that event, ancillary jurisdiction to [decide the dispute] would exist."  *Id*.  That, however, was not the case here. The undersigned was not even aware of the dispute at the time it entered its order approving the settlement and entering final judgment.

The short of the matter is this: The instant dispute involves a claim between non-diverse law firms who were not parties in the earlier federal suit.  That claim is

16

a state law claim for breach of an alleged fee agreement between those law firms.  No

attorney lien has been asserted.  There is not even a claim (as there was in *Kokkonen*)

that part of the consideration for that alleged agreement was dismissal of the earlier

federal suit.  Even if there were such a claim,

> [n]o federal statute makes that connection (if it constitutionally could)
> the basis for federal-court jurisdiction over the contract dispute. The
> facts to be determined with regard to such alleged breaches of contract
> are quite separate from the facts to be determined in the principal suit,
> and automatic jurisdiction over such contracts is in no way essential to
> the conduct of federal-court business.

*Id*.

Nor did this court retain jurisdiction to decide the instant dispute.  "Absent

such action," determination of the dispute "is for state courts, unless there is some

independent basis for federal jurisdiction."  *Id*. at 382.  For the reasons previously set

forth, there is no such independent basis present here.

## B.   Alternatively, the Court Declines To Exercise Supplemental Jurisdiction

Even if the court were to determine that supplemental jurisdiction exists, 28

U.S.C. § 1367(c) provides that the court may decline to exercise such jurisdiction if

"(1) the claim raises a novel or complex issue of State law, (2) the claim substantially

predominates over the claim or claims over which the district court has original

jurisdiction, (3) the district court has dismissed all claims over which it has original

17

jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

In this case, the court has not only dismissed all of the claims over which it had original jurisdiction, that case has closed completely. Further, here there are "other compelling reasons for declining jurisdiction;" namely, that the dispute between the lawyers does not involve and cannot effect and party to the prior federal proceeding. Rather, it is an entirely new breach of contract case, based upon state law.

## IV.   CONCLUSION

Based on the foregoing, the court determines that it does not have original, or supplemental, subject matter jurisdiction over the present dispute. Further, even if it did have supplemental jurisdiction over this matter, the court would, and does, decline to exercise it.

As the court lacks and/or declines subject matter jurisdiction, the motions are **DENIED** as **MOOT**.

**DONE** and **ORDERED** this 2nd day of August, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge